APPEAL OF THE MAYOR AND BOARD OF ALDERMEN OF THE CITY OF WATERBURY FROM AN ORDER OF THE RAILROAD COMMISSIONERS.

Third Judicial District, New Haven, June Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

General Statutes, § 3892, provides that upon written request of the mayor of any city, the selectmen of any town, etc., to forbid the use for switching purposes of the tracks of any company where the same cross any highway within such city or town, the railroad commissioners shall visit the crossing after having given the interested parties notice, and, if they find that public convenience requires, shall order the railroad company not to use the same, or such part thereof as may be specified in the order, for switching purposes, and that they may make such orders regulating such switching as they may deem proper; also that "upon like application and notice" they "shall make such orders in regard to the laying of side tracks or tracks for switching purposes upon or across such highways, or for the removal of such tracks already laid, as they may judge proper." *Held:—*

1. That the main, if not the only, purpose of the statute was to further the well-settled policy of the State to abolish grade-crossings, or to restrict and regulate their use.
2. That the "request" which the statute contemplated, and upon which the railroad commissioners were authorized to act, was one made in the interest and for the benefit of the municipality.

3. That a written application perfunctorily signed by the mayor of a city, requesting permission for a manufacturing company to construct a switch or side track at grade across a highway for its own uses, was not within the purview of the statute, especially if the desired crossing would be of no benefit to the public but on the contrary a menace to human life and safety.

4. That the final clause of the statute permitting the railroad commissioners to make orders in regard to the laying of side tracks or tracks for switching purposes across highways, had reference only to changes restricting or regulating the use of existing grade-crossings, and did not empower them to order the construction of new ones where none had previously existed.

Argued June 9th—decided July 31st, 1911.

APPEAL from an order of the railroad commissioners authorizing the construction, maintenance and operation of a side track, at grade, across Hamilton Avenue in the city of Waterbury, to be used by a manufacturing company for switching purposes only, taken by the city of Waterbury to, and tried by, the Superior Court in New Haven County, *Reed, J.;* facts found and judgment rendered confirming the action of the railroad commissioners, and appeal by the appellant. *Error; judgment of Superior Court set aside, and cause remanded with direction to disaffirm and annul said order of the railroad commissioners.*

*Francis P. Guilfoile* and *Dennis J. Slavin,* for the appellant.

*Terrence F. Carmody,* for the Scovill Manufacturing Company and the New York, New Haven and Hartford Railroad Company, appellees.

HALL, C. J. Section 3892 of the General Statutes, upon which the application to the railroad commissioners in this proceeding was made, and under the provisions of which the railroad commissioners assumed to act, reads as follows: "Said commissioners, when

requested in writing by the selectmen of any town, the mayor of any city, or the warden of any borough, to forbid the use for switching purposes of the tracks of any company where the same cross any highway within such town, city, or borough, shall visit such crossing, first giving reasonable notice to the authorities making such request and to such company, and, if they find that public convenience requires, shall order the company operating such railroad not to use the same, or such part thereof as may be specified in said order, for switching purposes, and may make any order regulating such switching that they shall deem proper; and, upon like application and notice, shall make such orders in regard to the laying of side tracks or tracks for switching purposes upon or across such highways, or for the removal of such tracks already laid, as they may judge proper."

On the 18th of July, 1910, the mayor of Waterbury signed and presented to the railroad commissioners the following written application: "Pursuant to the provisions of § 3892 of the General Statutes of this State, I, William B. Hotchkiss, of Waterbury, New Haven County, mayor of the city of Waterbury, respectfully apply for permission for the Scovill Manufacturing Company, a corporation engaged in business in said Waterbury, to build and equip a railroad side track for switching purposes from a point on its own premises on the easterly side of Hamilton Avenue formerly called Dublin Street, in said Waterbury, connecting with the tracks of the N. Y. N. H. & H. R. R. Co., thence extending westerly along its own land and across said Hamilton Avenue at grade, . . . and for authority and permission to operate locomotives, cars and trains thereon upon such conditions as your Honorable Board may think proper to impose."

Notice of the hearing upon this application was given

to the mayor of Waterbury and the New York, New Haven and Hartford Railroad Company, and the railroad commissioners made an order authorizing said railroad company to construct, maintain, and operate a side track, for switching purposes only, "at grade across Hamilton Avenue," in accordance with the plans submitted with said application. From this order an appeal was taken to the Superior Court in the name of the mayor and board of aldermen of the city of Waterbury, and that court found these facts:—

The petition to the railroad commissioners was made in behalf of the Scovill Manufacturing Company, a private corporation doing business in Waterbury, which desires said siding for the purpose of reducing the expense of delivering coal at its bins. Said company has two yards, one on the east and the other on the west side of Hamilton Avenue. Upon the west one, which contains about five acres, there are some fifty factory buildings. The east yard, which is practically unimproved, contains some twenty-five acres. The main line of the Meriden and Waterbury division of the New York, New Haven and Hartford Railroad Company runs along the southerly side of said yards. The Scovill Manufacturing Company has already two sidings of about two thousand feet on their own premises, extending from said main line of railroad into said west yard, over which the incoming and outgoing freight is transported, but these spur tracks have become inadequate, owing to the increased business of the company. The proposed track crossing Hamilton Avenue at grade will cost about $3,600, and is to be located about twenty feet from the main track of said railroad company, measuring horizontally; but between the main track and the proposed spur track there is a difference of level of about twenty feet. There are other ways described in the draft-finding and

marked "proven," by which a spur track can be constructed without having it cross Hamilton Avenue at grade. Such plans would involve a much greater expense to the company than that authorized by the railroad commissioners, but the Scovill Manufacturing Company is able to pay such increased expense. The Scovill Manufacturing Company has never consulted competent engineering authority to ascertain a feasible plan of constructing such spur track without crossing Hamilton Avenue at grade. Hamilton Avenue is in a residential and manufacturing section of the city. It extends from East Main Street in Waterbury, to the town of Prospect, a distance of about five miles. There are two large cemeteries adjoining it, and several funeral processions pass daily along the avenue and over the proposed location of the spur track, as do also some forty school children. The proposed spur track is intended for the exclusive use and benefit of the Scovill Manufacturing Company, and the public will in no way be benefited by it. It will be a permanent burden upon the highway, and will be dangerous to the lives of persons using said highway, and will prevent the construction of a proposed trolley track along said avenue.

The city of Waterbury, the appellant in this court, claims, in substance, that the facts found do not justify the order of the railroad commissioners, and that the Superior Court erred in affirming it.

It has been the policy of this State for many years to secure, as speedily as it can reasonably be accomplished, the abolition of dangerous grade-crossings of highways and steam railroads. Our legislature has by numerous enactments forbidden the construction of new highways and street railways over steam railroads, and of steam railroads over existing highways and street railways, at grade, and has provided for the removal of existing

grade-crossings of railroads and highways, upon petition to the railroad commissioners by certain officers of the municipalities in which they exist; by the directors of the railroads so crossing highways; by street-railway companies having the right to lay their tracks in streets where there are such grade-crossings; and by the action of the railroad commissioners, in the absence of any application therefor. General Statutes, §§ 3708, 3709, 3710, 3713, 3714, 3862, 3863. The purpose of these sections was to cause the removal, or the restriction or modification of the use, of existing grade-crossings, and not to authorize the construction of dangerous grade-crossings, and such removal, or the restriction of the use, of such tracks so crossing highways, was the principal, if not the only, purpose of the section under consideration.

Section 3892 contemplates, first, some action by the principal officer or officers of those municipalities to which the State has largely delegated the power of regulating the manner in which highways within their limits shall be maintained and used. That action is a written request by such officer. This does not mean that such officer shall, as a magistrate, merely sign the request of any person or company who may desire to build such crossing. Much less does it mean that such request may be that of the selectmen of a town, or the mayor of a city, to do something which they, neither as individuals or as officers of the municipality, desire to have done, but are opposed to having done, and something which they know the municipality they represent is opposed to having done. The request intended by this section is one which is supposed to be the voice of the municipality, speaking through its chief executive officer.

The writing before us is not such a request. It is nothing more than the request of the Scovill Manu-

facturing Company, made through the mayor of the city, for permission to do an act which, from the facts found and from the appeal taken, it is apparent that both the mayor and the municipality were opposed to having done. Section 3892 makes no provision for a request by a manufacturing company, or by any one in behalf of such a company, for either the removal or the construction of a grade-crossing.

Second, the request upon which this section empowers the railroad commissioners to act is one regarding acts to be done by railroad companies, and not by manufacturing companies. The request in the present case is that the Scovill Manufacturing Company be permitted to build and equip a railroad track for switching purposes across Hamilton Avenue at grade, and "for authority to operate locomotives, cars and trains thereon. . . ." There is no request that the railroad company be ordered or permitted to do any act. We discover nothing in § 3892 empowering the railroad commissioners to authorize manufacturing companies to construct steam railroad grade-crossings, or to consider requests for permission to do so.

Again, the written request upon which this section empowers the railroad commissioners to act is a request to the commissioners "to forbid the use for switching purposes of the tracks of any company [evidently meaning any railroad company] where the same cross any highway." The section certainly contains no express provision for a request or application for authority to construct switching tracks at grade across a highway, over which there are no existing switching tracks at grade. We can readily see how the framers of this section may have supposed that municipalities having charge of highways might desire to request, through their officers, that switching tracks crossing streets at grade should be removed, or their use restricted; but

it is difficult to understand why the legislature should have deemed it necessary to provide that the named officers of municipalities should have the privilege of requesting that a railroad track should be allowed to be laid at grade across a highway over which there was no existing grade-crossing, and especially when the construction of such a crossing would not benefit the public and would endanger human life. In the present case, as we understand the facts, there is no existing side or switching track crossing Hamilton Avenue at grade, and no existing right to construct one.

But it is claimed that the words of § 3892, "and, upon like application and notice, shall make such orders in regard to the laying of side tracks or tracks for switching purposes upon or across such highways, or for the removal of such tracks already laid, as they may judge proper," expressly authorize the named municipal officers to request and empower the railroad commissioners to order the construction of such a · grade-crossing, even in cases where there is no such existing grade-crossing. This contention is based upon the claim that the words "upon like application" mean merely upon a written request signed by the municipal officers named; and that a writing, signed by a mayor of a city, requesting the railroad commissioners to grant to a manufacturing company the right or privilege of constructing a dangerous grade-crossing across a highway over which none existed, may properly be termed a "like application" with one signed by such mayor, requesting that a railroad company be prohibited from using an existing crossing for switching purposes, or that the use of such crossing be restricted or regulated. We think two such materially different applications can hardly be termed like applications, but must be called essentially unlike.

The order of the railroad commissioners in form

authorizes the New York, New Haven and Hartford Railroad Company to construct the proposed track. The facts found regarding the cost of the construction and the ability of the Scovill Manufacturing Company to pay it, and that the crossing would be for the sole benefit of the Scovill Manufacturing Company, show quite clearly that the privilege granted was the privilege asked for in the written application, and was in effect the granting of a privilege to the Scovill Manufacturing Company to construct a grade-crossing dangerous to human life, to enable it to avoid the greater expense of constructing a safe one over or under the highway; and that, in so far as the railroad company was to act in the matter, it was to act for the Scovill Manufacturing Company.

We think the provision of § 3892, authorizing the railroad commissioners to make such orders as they may deem proper regarding the laying of side tracks and tracks for switching purposes across such highways, only empowers the commissioners to direct the company operating the railroad to lay such tracks when changes are ordered to be made for the purpose of preventing, modifying, or restricting the use of existing grade-crossings.

Under § 3892, and upon the facts before us, the railroad commissioners were not empowered, upon this application, to make the order made by them, and the Superior Court erred in affirming it.

There is error, and the judgment of the Superior Court is set aside and the cause remanded with direction to disaffirm and annul said order of the railroad commissioners.

In this opinion the other judges concurred.